1
2
3
4
5
6
7
8
9
10

**United States District Court**
For the Northern District of California

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JODY LYNN VON HAAR,                              ) | Case No.: 10-CV-02995-LHK |
|                                                 ) | |
|                          Plaintiff,             ) | ORDER GRANTING MOTION TO |
|           v.                                    ) | DISMISS WITH LEAVE TO AMEND |
|                                                 ) | |
| CITY OF MOUNTAIN VIEW, TONY                     ) | |
| VIERYA, aka JOSE VIEYRA, TY ZEMLOK,             ) | |
| FERNANDO MALDONADO, Does 1-100,                 ) | |
|                                                 ) | |
|                          Defendants.            ) | |
|                                                 ) | |

Defendants City of Mountain View, Tony Vierya (aka Jose Vieyra), Ty Zemlok, and Fernando Maldonado move to dismiss Plaintiff's First Amended Complaint ("FAC"). Pursuant to Civil Local Rule 7-1(b), the Court concludes that this motion is appropriate for determination without oral argument. Having considered the parties' submissions and the relevant law, the Court GRANTS Defendants' motion to dismiss with leave to amend. The motion hearing and case management conference previously scheduled for March 3, 2011 are therefore vacated.

## I. Background

This action involves the alleged use of excessive force and infliction of cruel and unusual punishment by police officers employed by the City of Mountain View. Plaintiff Jody Lynn Von Haar alleges that on September 15, 2009, she was a passenger in a vehicle stopped by Defendant police officers Ty Zemlok and Fernando Maldonado. FAC ¶ 9. Defendant police officer Tony Vieyra arrived at the scene after the initial stop, and in the course of restraining Plaintiff allegedly

1

caused a comminuted fracture to her right arm.  *Id.*  Plaintiff claims that Defendants then

handcuffed and restrained her, and transported her to a hospital emergency room without any prior

first aid, all of which resulted in bodily harm, physical pain and suffering, and emotional distress.

*Id.*  Plaintiff claims that Defendants Zemlok and Maldonado caused further injury to Plaintiff by

failing to assert control over the crime scene and failing to inform, supervise, and restrain

Defendant Vieyra in order to prevent the excessive use of force.  FAC ¶ 10.  Plaintiff also claims

that Defendant City of Mountain View fails to adequately train its police officers regarding: (1)

how to "self-organize into a led team at the scene of an arrest"; (2) first aid procedure and

symptoms of basic injuries and shock; and (3) the need to seek and obtain emergency medical

response by trained personnel when an injury occurs in the course of an arrest.  FAC ¶ 12.  Plaintiff

contends that she was injured as a direct and proximate result of the City's failure to adequately

train its officers.  *Id.*

    After first making a claim of loss to the City of Mountain View, FAC ¶ 14, Plaintiff filed

the instant action against the City of Mountain View and against police officers Vieyra, Zemlock,

and Maldonado in their individual capacity.  Defendants initially moved to dismiss Plaintiff's

Section 1983 claim against the City of Mountain View and to dismiss Plaintiff's state law claims in

their entirety.  The Court granted Defendants' motion with leave to amend on November 12, 2010,

and Plaintiff subsequently filed a First Amended Complaint.  Like the original Complaint,

Plaintiff's First Amended Complaint asserts two causes of action: (1) a claim pursuant to 42 U.S.C.

§ 1983 for violations of Plaintiff's right to be free of cruel and unusual punishment guaranteed by

the Eighth and Fourteenth Amendments; and (2) a claim under various provisions of the California

Tort Claims Act.  Defendants now move under Rule 12(b)(6) to dismiss Plaintiff's First Amended

Complaint in its entirety.

## II.  Legal Standard

    A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal

sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  A Rule 12(b)(6)

dismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient

facts alleged under a cognizable legal theory.  *Johnson v. Riverside Healthcare System*, LP, 534

2

1   F.3d 1116, 1121 (9th Cir. 2008).  In considering whether the complaint is sufficient to state a

2   claim, the court must accept as true all of the factual allegations contained in the complaint.

3   *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  However, the court need not accept as true

4   "allegations that contradict matters properly subject to judicial notice or by exhibit" or "allegations

5   that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *St. Clare*

6   *v. Gilead Scis., Inc.* (*In re Gilead Scis. Sec. Litig.*), 536 F.3d 1049, 1055 (9th Cir. 2008).  While a

7   complaint need not allege detailed factual allegations, it "must contain sufficient factual matter,

8   accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 129 S.Ct. at 1949

9   (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible

10  when it "allows the court to draw the reasonable inference that the defendant is liable for the

11  misconduct alleged." *Iqbal*, 129 S.Ct. at 1949.  If a court grants a motion to dismiss, leave to

12  amend should be granted unless the pleading could not possibly be cured by the allegation of other

13  facts.  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

14  **III. Discussion**

15      **A.  Section 1983 Claim (First Cause of Action)**

16      Plaintiff's first cause of action alleges violations of Plaintiff's Eighth and Fourteenth

17  Amendment rights, pursuant to 42 U.S.C. § 1983.  Defendants move to dismiss this claim on a

18  number of grounds.  First, they argue that Plaintiff cannot bring a claim under the Eighth

19  Amendment because Plaintiff was a pre-trial detainee, rather than a prisoner, at the time of the

20  events alleged.  Second, they argue that even if Plaintiff's claims are construed as claims of

21  excessive force under the Fourth Amendment or deliberate indifference under the Due Process

22  Clause of the Fourteenth Amendment, a number of Plaintiff's claims against the individual

23  defendants fail to allege sufficient facts to state a claim for relief.  Third, Defendants argue that

24  Plaintiff's amended allegations of municipal liability remain insufficient to state a viable claim for

25  relief under Section 1983 against the City of Mountain View.

26          **1.      Constitutional Basis for Plaintiff's Claims**

27      As a threshold matter, the Court agrees with Defendants that the Eighth Amendment does

28  not provide a cognizable legal basis for Plaintiff's Section 1983 cause of action.  It is well-

3

1    established that "the Fourteenth Amendment's Due Process Clause, rather than the Eighth

2    Amendment's protection against cruel and unusual punishment, applies to pretrial detainees."

3    *Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010). As Defendants point out,

4    Plaintiff alleges that she was injured during the course of a stop or arrest and immediately

5    thereafter, and there is no indication that she was in custody as a prisoner at that time.

6    Accordingly, the Eighth Amendment does not apply to Plaintiff's claims.

7            There remains a question, however, as to whether Plaintiff's claims are more properly

8    brought under the Fourth Amendment or the Due Process Clause of the Fourteenth Amendment.

9    Defendants note that the FAC can reasonably be understood as alleging a claim of excessive force

10   against Defendant Vierya. Such claims are properly brought under the Fourth Amendment, made

11   applicable to states and divisions of the states through the Fourteenth Amendment. *See Graham v.*

12   *Connor*, 490 U.S. 386, 395 (1989) ("*all* claims that law enforcement officers have used excessive

13   force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be

14   analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a

15   'substantive due process' approach"). Likewise, Plaintiff's claim that Defendants caused her injury

16   by handcuffing and restraining her after Defendant Vierya fractured her arm appears to plead

17   excessive use of force cognizable under the Fourth Amendment.

18           Finally, the Ninth Circuit has recently treated the failure to provide adequate medical care

19   during and immediately following an arrest as a claim properly brought under the Fourth

20   Amendment and subject to the Fourth Amendment's objective reasonableness standard.[1] *See*

21   *Tatum v. City and County of San Francisco*, 441 F.3d 1090, 1098-99 (9th Cir. 2006) (evaluating

22   police decision not to perform CPR after arresting and handcuffing plaintiff under Fourth

23   Amendment reasonableness standard); *see also Estate of Phillips v. City of Milwaukee*, 123 F.3d

24   586, 595-96 (7th Cir. 1997) (concluding that the Supreme Court's decision in *Graham* requires

25   claims of failure to provide medical attention during arrest to be analyzed under the Fourth

26   Amendment reasonableness standard); *Price v. County of San Diego*, 990 F. Supp. 1230, 1241 &

---

[1] Notably, however, the Ninth Circuit found that the standard for post-arrest care previously articulated under the Due Process Clause applies equally under the Fourth Amendment. *Tatum*, 441 F.3d at 1099.

4

United States District Court
For the Northern District of California

n.22 (S.D. Cal. 1998) (analyzing failure to give CPR after arrest as Fourth Amendment claim). Thus, to the extent that Plaintiff alleges a failure to provide first aid during and immediately following her arrest, this claim, too, appears to be most properly brought under the Fourth Amendment.

Based on this analysis, the Court agrees with Defendants that Plaintiff's entire Section 1983 cause of action should be dismissed with leave to amend to allege the proper constitutional basis for her claims. However, Defendants also argue that a number of Plaintiff's constitutional claims fail even if construed as claims brought under the appropriate constitutional provision. The Court will therefore briefly address the deficiencies identified by Defendants.

### 2.        Claim against Defendant Vierya

Plaintiff alleges that Defendant Vierya caused a comminuted fracture to Plaintiff's right arm while attempting to restrain her. FAC ¶ 9. Defendants concede that these allegations can be reasonably understood to allege a claim of excessive force against Defendant Vierya and that Plaintiff should be given leave to amend to allege this claim under the Fourth Amendment. The Court agrees.

### 3.        Other Claims against the Individual Defendants

Plaintiff alleges two additional claims against the individual Defendants. First, Plaintiff alleges that after Defendant Vierya caused a comminuted fracture to Plaintiff's arm, Defendants "handcuffed and restrained her, and transported her in a patrol car to a hospital emergency room without any prior first aid." FAC ¶ 9. To the extent that Plaintiff intends to allege that Defendants used excessive force in handcuffing and restraining Plaintiff, knowing that she was injured, Plaintiff may amend and clarify these allegations to state a Fourth Amendment claim. As to the denial of first aid, the Court agrees with Defendants that the facts alleged are not sufficient to plausibly establish a constitutional violation. The Ninth Circuit has stated that a police officer may fulfill the constitutional duty to provide medical care to persons injured in the course of an arrest "by either promptly summoning the necessary medical help or by taking the injured detainee to a hospital." *Tatum*, 441 F.3d at 1099 (quoting *Maddox v. City of Los Angeles*, 792 F.2d 1408, 1415 (9th Cir. 1986)). Law enforcement officers are not required to provide "what hindsight reveals to

5

be the most effective medical care for an arrested suspect," *Tatum*, 441 F.3d at 1098, nor are they required to administer first aid or emergency medical treatment themselves.  *See id.* at 1099 (finding no affirmative duty on the part of the police to administer CPR).  Here, Plaintiff alleges that Defendants transported her in a patrol car to a hospital emergency room.  FAC ¶ 9.  There are no allegations that Defendants unduly delayed in taking Plaintiff to the hospital, and the FAC does not suggest that providing care in this manner was otherwise objectively unreasonable.  However, as Plaintiff may be able to allege facts to cure these deficiencies, Plaintiff is granted leave to amend these allegations.

Second, Plaintiff alleges that Defendants Zemlock and Maldonado caused injury to Plaintiff "in that Officer Tony Vieyra, aka Jose Vieyra was not the original arresting officer and arrived at the scene after the traffic stop, and said Ty Zemlok and Fernando Maldonado failed to assert control over the crime scene and to inform, supervise and restrain said Tony Vieyra, aka Jose Vieyra in order to prevent the use of excessive force."  FAC ¶ 10.  Defendants argue that these allegations are not sufficient to state a constitutional violation under the Due Process Clause. While that may be true, the Court reads Plaintiff's allegations as an attempt to hold Defendants Zemlok and Maldonado liable for Defendant Vieyra's alleged use of excessive force in violation of the Fourth Amendment.  Based on Plaintiff's allegations that Defendants Zemlok and Maldonado failed to supervise Defendant Vieyra, it appears that Plaintiff intends to allege some form of supervisor liability.  Under Ninth Circuit precedent, a supervisor may be held liable under Section 1983 for "1) their own culpable action or inaction in the training, supervision, or control of subordinates; 2) their acquiescence in the constitutional deprivation of which a complaint is made; or 3) for conduct that showed a reckless or callous indifference to the rights of others."  *Edgerly v. City and County of San Francisco*, 599 F.3d 946, 961 (9th Cir. 2010) (quoting *Cunningham v. Gates*, 229 F.3d 1271, 1292 (9th Cir. 2000)).  A supervisor's failure to intervene and bring his subordinates under control may, under some circumstances, support liability under Section 1983. *Lolli v. County of Orange*, 351 F.3d 410, 418 (9th Cir. 2003).  Here, however, while Plaintiff alleges that Defendants Zemlock and Maldonado failed to assert control and supervise Defendant Vieyra, the FAC does not allege that Vieyra was a subordinate officer over whom Zemlock and

6

United States District Court
For the Northern District of California

Maldonado had supervisory authority.  Rather, the FAC merely indicates that Zemlock and Maldonado were first to arrive on the scene and that Vieyra arrived later.  Without more, this is not sufficient to plausibly suggest that Zemlok and Maldonado may be held liable as supervisors for Vieyra's allegedly unconstitutional conduct.  Because Plaintiff may be able to allege facts sufficient to cure this deficiency, Plaintiff is granted leave to amend this claim.

### 4.       Municipal Liability Claim

Finally, Defendants argue that Plaintiff fails to state a claim for municipal liability pursuant to Section 1983.  As the Court explained in its previous order, a local government may be held liable under Section 1983 only if the plaintiff can demonstrate that the government's official policy or custom was the "moving force" responsible for infliction of her injuries.  *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694 (1978).  Plaintiff's amended complaint alleges that the City of Mountain View maintains a practice and custom of failing to train, or failing to adequately train, its police officers regarding: (1) how to "self-organize into a led team at the scene of an arrest . . . where more than one police unit responds . . . in order to conduct [an arrest] in an orderly and lawful manner and avoid injury to the suspect"; (2) first aid procedure and symptoms of basic injuries and shock; and (3) the need to seek and obtain emergency medical response by trained personnel when an injury occurs in the course of an arrest.  FAC ¶ 12.

"[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."  *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).  In order for liability to attach, the failure to train must reflect "a 'deliberate' or 'conscious' choice by a municipality."  *Id.* at 389.  Such deliberate indifference may be shown, for instance, where "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need."  *Id.* at 390.  The plaintiff must also demonstrate that the deficiency in training actually caused the constitutional violation alleged.  *Id.* at 391.

Case No.: 10-CV-02995-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

United States District Court
For the Northern District of California

1    Defendants argue that Plaintiff's claim of municipal liability fails because the FAC does not

2    allege that the City of Mountain View was motivated by deliberate indifference or that the failure

3    to train reflected a deliberate or conscious choice by the City.  The Ninth Circuit, however, has not

4    required plaintiffs to plead claims of municipal liability in detail in order to survive a motion to

5    dismiss.[2]  *See Whitaker v. Garcetti*, 486 F.3d 572, 581 (9th Cir. 2007) ("In this circuit, a claim of

6    municipal liability under [§] 1983 is sufficient to withstand a motion to dismiss even if the claim is

7    based on nothing more than a bare allegation that the individual officers' conduct conformed to

8    official policy, custom, or practice.") (quoting *Galbraith v. County of Santa Clara*, 307 F.3d 1119,

9    1127 (9th Cir. 2002)); *see also Buckheit v. Dennis*, 713 F. Supp. 2d 910, 920 (N.D. Cal. 2010).  It

10   is true that Plaintiff's amended complaint does not reference the deliberate indifference standard.

11   Nonetheless, Plaintiff alleges that Mountain View "maintained a practice and custom" of failing to

12   adequately train its officers, and Plaintiff identifies three specific areas in which Mountain View's

13   training was deficient.  FAC ¶ 12.  The training areas identified are closely related to Plaintiff's

14   theory of how her injury occurred – that is, through poor coordination of multiple police response

15   units and the failure by arresting officers to recognize and seek appropriate medical care for her

16   injuries.  *See City of Canton*, 489 U.S. at 391 ("for liability to attach . . . the identified deficiency in

17   a city's training program must be closely related to the ultimate injury").  Moreover, it is plausible

18   that the City of Mountain View knew that its officers would be required to coordinate multiple

19   police units at the scene of an arrest and to respond adequately to persons injured in the course of

20   an arrest.  Accordingly, if Plaintiff is correct the City's training on these issues was inadequate, she

21   may also be able to show that the failure to train amounted to deliberate indifference.  The Court

22   thus finds that if Plaintiff's allegations of municipal liability are sufficient to survive a motion to

23   _____

24   [2] The Ninth Circuit does not appear to have considered whether the Supreme Court's decisions in
     *Iqbal* and *Twombly* would require something more than "bare allegations" regarding municipal
25   liability.  Here, however, Plaintiff alleges more than bare legal conclusions and identifies three
     specific areas in which the City of Mountain View, pursuant to practice and custom, allegedly fails
26   to adequately train its officers.  Such a claim is cognizable under Section 1983, although liability
     will not ultimately attach unless Plaintiff can prove deliberate indifference.  *See City of Canton*,
27   489 U.S. at 392 ("while claims such as respondent's—alleging that the city's failure to provide
     training to municipal employees resulted in the constitutional deprivation she suffered—are
     cognizable under § 1983, they can only yield liability against a municipality where that city's
28   failure to train reflects deliberate indifference to the constitutional rights of its inhabitants").

Case No.: 10-CV-02995-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

1    dismiss.  However, as Plaintiff's municipal liability claim cannot be premised on Eighth

2    Amendment violations, as discussed above, the claim will be dismissed with leave to amend.

3        For the reasons discussed above, Plaintiff's cause of action pursuant to 42 U.S.C. § 1983

4    for violations of her Eighth Amendment rights is DISMISSED with leave to amend.

5                    **B.  California Tort Claims Act (Second Cause of Action)**

6        Plaintiff's second cause of action alleges claims under the California Tort Claims Act, Cal.

7    Gov. Code § 810 et seq, also known as the Government Claims Act.  As the Court previously

8    explained, the Government Claims Act, is "a thoughtfully devised statutory plan that is designed to

9    control the basis under which public entities may be liable for damages." *Roberts v. County of Los*

10   *Angeles*, 175 Cal. App. 4th 474, 480, 96 Cal. Rptr. 3d 60 (Cal. Ct. App. 2009) (internal quotation

11   marks and citation omitted).  It defines the scope of liability for public entities and public

12   employees, and also sets forth detailed procedural requirements for claims against public entities.

13   *Id.*  As to public employees, the Act provides that "a public employee is liable for injury caused by

14   his act or omission to the same extent as a private person," except as otherwise provided by statute.

15   Cal. Gov. Code § 820.  As to public entities, including cities, Cal. Gov. Code § 811.2, the Act

16   eliminates common law tort liability and requires instead that any liability be based on statute.

17   *Guzman v. County of Monterey*, 46 Cal. 4th 887, 897, 209 P.3d 89 (2009); Cal. Gov. Code § 815.

18   The Act further provides a statutory basis for vicarious municipal liability for injuries "proximately

19   caused by an act or omission of an employee of the public entity within the scope of his

20   employment if the act or omission would, apart from this section, have given rise to a cause of

21   action against that employee or his personal representative."  Cal. Gov. Code § 815.2.

22       The Court previously dismissed Plaintiff's Government Claims Act cause of action because

23   she failed to specify any particular statutory provision or common law cause of action on which

24   liability could be predicated.  As amended, Plaintiff's complaint now predicates liability on six

25   sections of the Government Claims Act.  Five of these provisions define the scope of liability for

26   public entities or employees, but do not provide an independent cause of action.  *See* Cal. Gov't

27   Code § 815.2(a) (providing immunity for public entities); *id.* § 815.6 (providing for public entity

28   liability where the entity is under a mandatory statutory duty to protect against the injury suffered);

United States District Court
For the Northern District of California

1   *id.* § 820(a) (providing that public employees are liable to the same extent as private persons); *id.*

2   § 845 (barring liability for failure to provide sufficient police protection services); *id.* § 950

3   (providing that claim presentation requirement does not apply to public employees).  While

4   Plaintiff may rely on some of these provisions to establish that Defendants are not immune from

5   liability, these provisions, on their own, do not establish a basis for liability.

6          The sixth provision, Cal. Gov't Code § 845.6, provides that public entities and employees

7   may be held liable for "injury proximately caused by the failure of the employee to furnish or

8   obtain medical care for a prisoner in his custody . . . .  if the employee knows or has reason to

9   know that the prisoner is in need of immediate medical care and he fails to take reasonable action

10  to summon such medical care."  Had Plaintiff been a prisoner at the time of the events alleged in

11  the FAC, she might be able to predicate liability on § 845.6.  However, § 845.6 applies only to "an

12  inmate of a prison, jail, or penal or correctional facility."  Cal. Gov't Code § 844; *see also Lawson*

13  *v. Superior Court*, 180 Cal. App. 4th 1372, 1384, 103 Cal. Rptr. 3d 834 (Cal. Ct. App. 2010)

14  (noting that Cal. Gov't Code § 844 defines "prisoner" for purposes of liability under § 845.6).  An

15  arrestee "becomes a prisoner, as a matter of law, upon his or her initial entry into a prison, jail, or

16  penal or correctional facility, pursuant to penal processes."  Cal. Gov't Code § 844.  The First

17  Amended Complaint indicates that Plaintiff was injured during a traffic stop and then transported

18  to the hospital.  There are no allegations that Plaintiff ever entered into a jail or other correctional

19  facility or that she underwent booking or any other penal process.  Accordingly, Plaintiff was not a

20  prisoner for purposes of the Government Claims Act, and she cannot establish liability under

21  § 845.6.

22         The Court has already dismissed Plaintiff's state law cause of action once.  However, it

23  remains possible that Plaintiff can cure the deficiencies in her complaint by identifying some

24  statutory or common law cause of action, such as an intentional tort, that provides a state-law basis

25  for liability.  Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's second

26  cause of action with leave to amend.  If Plaintiff's second amended pleading still does not allege a

27  viable state law cause of action, however, her state law claim will be dismissed with prejudice.

28

**United States District Court**
For the Northern District of California

10

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IV. Conclusion**

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss Plaintiff's First Amended Complaint with leave to amend.  The motion hearing and case management conference previously scheduled for March 3, 2011, are hereby VACATED.  **Plaintiff shall file a Second Amended Complaint, if any, within 14 days of this Order.**  The Court notes that Plaintiff is represented by counsel, and the Second Amended Complaint will be her third attempt to state a claim in this action.  Plaintiff is thus advised that if the Second Amended Complaint fails to cure the deficiencies identified in her previous pleadings, the Court will not be inclined to grant further leave to amend.  *See Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010) ("A district court may deny a plaintiff leave to amend . . . if the plaintiff had several opportunities to amend its complaint and repeatedly failed to cure deficiencies.").

**IT IS SO ORDERED.**

Dated: March 1, 2011

_____
LUCY H. KOH
United States District Judge

11