1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JODY LYNN VON HAAR,<br><br>                    Plaintiff,<br>        v.<br><br>CITY OF MOUNTAIN VIEW, TONY VIEYRA, aka JOSE VIEYRA, TY ZEMLOK, FERNANDO MALDONADO, Does 1-100,<br><br>                    Defendants. | Case No.: 10-CV-02995-LHK<br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR RELIEF UNDER RULE 60 AND TO PURGE CONTEMPT |

Before the Court is the Motion for Relief Under Rule 60 and to Purge Contempt of William B. Look ("Mr. Look"), counsel for Plaintiff Jody Lynn Von Haar. ECF No. 58 ("Motion for Relief"). The Court also considers various arguments made in Mr. Look's Memorandum of Points and Authorities in support of his *Ex Parte* Application for an Order Shortening Time for Relief Under Rule 60 (ECF No. 64 ("Supp. Motion") (collectively, "Motions") to the extent these arguments pertain to the substance of Mr. Look's Motion for Relief. The Motion for Relief seeks relief from this Court's September 12, 2011 Civil Contempt Order ("Civil Contempt Order") finding Mr. Look in contempt of the Court. ECF No. 53. Having considered the Motions, the relevant case law, and Mr. Look's arguments at the November 6, 2012 hearing on this matter, the Court GRANTS IN PART and DENIES IN PART the Motion for Relief.

# I.       Background

## A.       Filing of the Complaint and Motions to Dismiss

On July 8, 2010, Plaintiff Jody Lynn Von Haar ("Plaintiff") filed a Complaint in the instant case, alleging that Defendants Tony Vieyra, Ty Zemlok, and Fernando Maldonado, all of whom were police officers for Defendant City of Mountain View (collectively, "Defendants"), used excessive force on Plaintiff during a traffic stop, and that Defendants' conduct constituted cruel and unusual punishment.  ECF No. 1.

On September 21, 2010, Defendants filed a motion to dismiss the Complaint.  ECF No. 6. Plaintiff filed her opposition on October 7, 2010.  Defendants filed their reply on September 10, 2012.  ECF No. 10.  Defendants' motion was granted on November 12, 2010.  ECF No. 16. Plaintiff filed her First Amended Complaint on November 23, 2010.  ECF No. 17.

Defendants moved to dismiss Plaintiff's First Amended Complaint on December 7, 2010. ECF No. 18.  Defendants mistakenly noticed their motion before Magistrate Judge Lloyd, who had been the presiding judge on the case before the case was reassigned to the undersigned judge on October 21, 2010.  ECF Nos. 14 and 18.  Accordingly, this Court issued an order resetting the hearing on Defendant's motion to dismiss so that it would take place before this Court.  ECF No. 19.  This Court also ordered that the deadline for Plaintiff to file her opposition would be January 13, 2011 (*id.*); thus, providing Plaintiff almost a month to respond to the motion to dismiss.

On January 24, 2011, Claudia Leed, counsel for Defendants, filed a declaration stating that Defendants had not received an opposition from Plaintiff.  ECF No. 21 at 2.  On January 27, 2011, two weeks after the Court ordered deadline, Plaintiff filed an opposition.  ECF No. 22.  In response to Defendants' statements regarding Plaintiff's failure to file an opposition by the Court's January 13, 2011 deadline, Plaintiff's counsel, Mr. Look, stated that: (1) "A Rule 12 Motion is a law motion and technically no opposition is required and plaintiff can stand on the pleadings," and (2) "[P]laintiff had to review the file to find the prior briefing Order, since the FRCP call[s] for a due date for [the] opposition twenty days prior to [the] hearing."  *Id.* at 1.

**United States District Court**
For the Northern District of California

Case No.: 10-CV-02995-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR RELIEF UNDER RULE 60 AND TO PURGE CONTEMPT

1    The Court granted Defendants' motion to dismiss the First Amended Complaint with leave

2    to amend.  ECF No. 24.  A Second Amended Complaint was filed on March 1, 2011.  ECF No. 25.

3    Defendants answered on March 16, 2011.  ECF No. 26.

4    **B.**     **Mr. Look's Conduct Following the Filing of the Second Amended Complaint**

5    Following the filing of the Second Amended Complaint, the Court scheduled a Case

6    Management Conference for May 4, 2011.  ECF No. 27.  The Court ordered the parties to submit a

7    Joint Case Management Statement by April 27, 2011.  *Id.*

8    On April 14, 2011, Ms. Leed, emailed Mr. Look a document containing Defendants'

9    portion of the Joint Case Management Conference Statement.  *See* Declaration of Claudia Leed in

10    Support of Defendants' Response to Plaintiffs' Response to Order to Show Cause, ECF No. 36

11    ("Leed Decl."), Ex. B.  Ms. Leed requested that Plaintiff complete her portion of the statement by

12    April 21, 2011.  *Id.*  Mr. Look responded on April 15, 2011, stating: "I may substitute out of this

13    case since I anticipate I will be out of state for several months.  Thus, I may defer a response to the

14    last minute to allow new counsel to handle this."  *Id.*  Nevertheless, in a second email on April 15,

15    2011, Mr. Look forwarded a revised draft of the Joint Case Management Conference Statement

16    incorporating Plaintiff's positions.  *Id.*

17    In the Joint Case Management Conference Statement, Defendants informed the Court of

18    various issues relating to discovery.  Specifically, Defendants stated that they had provided their

19    initial Rule 26 Disclosures to Plaintiff, but that Plaintiff had not provided her Rule 26 Disclosures.

20    *See* ECF No. 29 at 5.   Defendants further stated that they had attempted to meet and confer with

21    Mr. Look "regarding Rule 26 Disclosures without success."  *Id.*  Defendants also stated that they

22    were willing to meet and confer with Mr. Look regarding Defendants' objections to a set of

23    Requests for Production propounded on Defendants by Plaintiff, but that Defendants had "been

24    unable to do so."  *Id.* at 6.

25    In Plaintiff's portion of the Joint Case Management Conference Statement, Mr. Look

26    responded to Defendants' allegations.  Specifically, Mr. Look stated that Plaintiff had "made

27    repeated efforts to meet and confer in February and [D]efendants did not cooperate."  *Id.* at 5.  Mr.

28

3

Case No.: 10-CV-02995-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR RELIEF UNDER RULE 60 AND TO
PURGE CONTEMPT

United States District Court
For the Northern District of California

1  Look stated that "[i]n March[,] [D]efendants chose a unilateral date not convenient to plaintiff,"

2  and that that was why "Rule 26 Disclosures ha[d] not been made." *Id.* Mr. Look also stated that

3  Plaintiff had not received any documents from Defendants. *Id.* Mr. Look further stated: "It is

4  ironic that defendants purport a lack of cooperation given the discovery history already of record in

5  this matter. ***Plaintiff sees no rational impediment to completing the Rule 26 procedure provided***

6  ***defendant is reasonably cooperative-- and as is clear from this statement the level of cooperation***

7  ***so far has not be[en] effective. (emphasis insisted upon by plaintiff's counsel.)" Id.*** (all emphasis

8  in original).

9      On May 4, 2011, the Court held an initial case management conference ("May 4 CMC").

10  Neither Mr. Look nor Plaintiff appeared. Furthermore, Ms. Leed relayed to the Court that she had

11  had substantial difficulties in working with Mr. Look. Specifically, Ms. Leed noted that, while Mr.

12  Look was somewhat responsive to e-mails, Mr. Look did not answer telephone calls. Transcript of

13  May 4, 2011 Case Management Conference ("May 4 CMC Transcript") at 5:19-25. Ms. Leed also

14  stated she had noticed Plaintiff's deposition for May 5, 2011, and received no objection from

15  Plaintiff. *Id.* at 13:17-25. However, when she brought up the deposition date with Mr. Look via e-

16  mail prior to the May 4 CMC, Mr. Look stated that his client was unavailable and that Mr. Look

17  was not sure whether Mr. Look would be available either. *Id.* Ms. Leed also reiterated

18  Defendants' statements in the Joint Case Management Conference Statement regarding the

19  difficulties in arranging a Rule 26 Conference with Mr. Look, and Mr. Look's failure to respond to

20  Defendants' objections to Plaintiff's Requests for Production. *Id.* at 14:11-20.

21      In light of Mr. Look's conduct, the Court set forth very specific deadlines for the parties to

22  meet and confer and to complete certain discovery obligations. *See id.* at 6:10-15, 9:9-13, 10:9-10,

23  12:4-7, 12:13-13:5, 14:21-15:23; ECF No. 30 (Case Management Order). Specifically, the Court

24  ordered that:

25      (1) By May 11, 2011, Plaintiff's counsel shall provide Plaintiff's dates of availability for
       deposition….

26
       (2) By May 13, 2011, the parties shall meet and confer regarding (a) Defendants'
27     objections to Plaintiff's requests for production, and (b) Defendants' request that Plaintiff
       produce copies of her medical records.

28

4

(3) By May 18, 2011, Plaintiff shall produce initial disclosures.

(4) By May 25, 2011, Plaintiff and Defendants shall exchange documents designated in the initial disclosures….

ECF No. 30.  The parties were additionally required to meet and confer regarding a protective order by May 18, 2011.  *Id.*  The Court also advised Plaintiff that if she failed to comply with the Court-ordered deadlines, the Court might issue an order to show cause why the case should not be dismissed for failure to prosecute or why Plaintiff's counsel and/or Plaintiff should not be sanctioned for failure to comply with a Court order.  *Id*; *see also* May 4 CMC Transcript at 6:10-15; ECF No. 30.  The Court further instructed Ms. Leed to advise the Court if Plaintiff failed to comply with the Court's orders.  May 4 CMC Transcript at 15:24-16:5.

On May 26, 2011, Defendants filed a notice advising the Court that Plaintiff had failed to comply with the Court's May 4, 2011 Case Management Order.  *See* Defendants' Report of Plaintiff's Non-Compliance With Court Order, ECF No. 32.  Plaintiff filed no response to Defendants' notice.  Accordingly, on June 6, 2011, the Court ordered Plaintiff to show cause why the case should not be dismissed for failure to prosecute.  ECF No. 33.  Mr. Look filed a response in which he explained that counsel and Plaintiff lacked funds to prosecute the case, and that Plaintiff had been seeking new counsel.  ECF No. 34.  In response, Defendants filed a statement in which they informed the Court that Plaintiff's counsel was suspended from the practice of law effective April 4, 2011 for a period of 120 days.  *See* Leed Decl., ¶ 2; *id.*, Ex. A (Suspension Order from the California State Bar).  Defendants stated that Mr. Look had engaged in the unauthorized practice of law by signing the Joint Case Management Conference Statement and responding to Ms. Leed's emails regarding: (1) the preparation of the joint statement, and (2) certain informal document requests.  *Id.*, ¶ 4.  Among the emails referenced was Mr. Look's April 15, 2011 email stating that he was "substitut[ing] out of this case [because he]… anticipate[d] [he would]… be out of state for several months."  *Id.*  In reply, Mr. Look acknowledged the suspension, but claimed that it had not yet taken effect.  ECF No. 37.

Case No.: 10-CV-02995-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR RELIEF UNDER RULE 60 AND TO PURGE CONTEMPT

United States District Court

For the Northern District of California

1        On July 2, 2011, the Court ordered Mr. Look to file a motion to withdraw by July 15, 2011,

2   as it appeared that he was no longer financially able to represent Plaintiff.  ECF No. 38.  Mr. Look

3   failed to file this motion by the July 15, 2011 deadline.

4        Subsequently, on August 24, 2011, both parties filed separate Case Management Statements

5   in advance of the next Case Management Conference, which was scheduled to take place on

6   August 31, 2011.  ECF Nos. 39 and 40.  In Defendants' Case Management Statement, Defendants

7   noted that Plaintiff was required to file a motion to withdraw by July 15, 2011 and that Mr. Look

8   had not done so.  ECF No. 39 at 5.  Defendants additionally noted that Plaintiff still had not made

9   her initial disclosures, and that defense counsel still had not had any success in meeting and

10  conferring with Mr. Look.  *Id.*  Defendants further stated that discovery in the case was "effectively

11  stalled since [Mr. Look]… ha[d] not produced his client for deposition or provided Rule 26

12  [d]isclosures."  *Id.*  Defendants further noted that Plaintiff still had not complied with the Court's

13  May 4, 2011 Case Management Order requiring Plaintiff to participate in discovery and meet and

14  confer with defense counsel regarding various discovery issues.  *Id.*

15       In Plaintiff's Case Management Conference Statement, Mr. Look stated that he had been

16  seeking to obtain new counsel to represent Plaintiff but had not been able to find an attorney

17  willing to take on the case.  ECF No. 40 at 1-2.  Mr. Look also stated that, "[d]espite several

18  attempts to reach [P]laintiff by email and correspondence[,]" Mr. Look had been unable to contact

19  Plaintiff since "early June 2011."  *Id.* at 2.  Mr. Look stated that, "[a]s a result, it is not possible to

20  file a substitution of counsel."  *Id.*  Accordingly, Mr. Look contended that he was left with "no

21  alternative except to request leave to withdraw…."  *Id.*

22       A further Case Management Conference was held on August 31, 2011 ("August 31 CMC").

23  ECF No. 42 (Case Management Order).  At the Case Management Conference, the Court inquired

24  as to why Mr. Look had not filed his motion to withdraw as counsel by the July 15, 2011 deadline.

25  Transcript of August 31, 2011 Case Management Conference ("August 31 CMC Transcript") at

26  2:12-14.  Mr. Look stated that he failed to file the motion to withdraw because he

27  "[mis]understood" the Court's order, and believed the Court was "request[ing] that we file[] a

28

6

1   substitution of counsel." *Id.* at 2:15-16; ECF No. 53 at 4.  Mr. Look claimed that he "overlooked"

2   the language in the order requiring him to file a motion to withdraw.  *Id.* at 2:21-22.  Mr. Look

3   further stated that he "was uncertain how [he] should proceed" because he had "had no

4   communication from the client[]."  *Id.* at 2:23-3:2; *see also* ECF No. 40 (stating that Mr. Look had

5   had no contact from the client "since early June 2011").  In response to Mr. Look's claims that he

6   had not known he needed to file a motion to withdraw, the Court advised Mr. Look that his

7   explanation was not believable because he had made a "request for leave to withdraw" in his

8   August 24, 2011 Case Management Conference Statement.  August 31 CMC Transcript at 10:24-

9   25.  Mr. Look responded that he made the request for leave to withdraw not because he believed he

10  was required to do so by the Court's July 2, 2011 Order, but rather because, on August 23, 2011, he

11  had been informed by counsel for the State Bar that he was required to withdraw from all pending

12  cases.  *Id.* at 11:3-6, 11:14-18.  Mr. Look stated that he had previously believed he "could remain

13  of record and have counsel appear specially to fill in for [Mr. Look] during the period of [his]

14  suspension."  *Id.* at 5: 7-9.

15          The Court informed Mr. Look that it was ordering Mr. Look's client to show cause why the

16  case should not be dismissed for failure to prosecute.  *See Id.* at 3:17-18; ECF No. 42.  The Court

17  further stated that it was ordering Mr. Look to show cause why sanctions should not be imposed.

18  August 31 CMC Transcript at 17:24-25; ECF No. 42.  In order to allow the hearing on the order to

19  show cause regarding sanctions to occur before September 9, 2011, the date Mr. Look's State Bar

20  suspension would begin, the Court scheduled the hearing for September 8, 2011. *See* August 31

21  CMC Transcript at 25:22-25 ("The Court: I am going to set a hearing on the order to show cause,

22  and unfortunately I think it needs to be before the 9th because that's when you are no longer able to

23  practice.  Mr. Look, Jr.: That's correct."); *id.* at 2:21-3:7 (Mr. Look stating that, if he were to file a

24  motion to withdraw, the motion would need to be "hear[d]… by the 7th" because Mr. Look was

25  going to be suspended beginning September 9, 2011).  Additionally, the Court ordered Mr. Look to

26  contact Plaintiff Jody Von Haar and explain to her his status with the State Bar.  *See* ECF No. 42.

27

28

Case No.: 10-CV-02995-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR RELIEF UNDER RULE 60 AND TO
PURGE CONTEMPT

**United States District Court**
For the Northern District of California

1  Notably, Mr. Look did not state at any point during the August 31 CMC that he had previously

2  informed Ms. Von Haar of his pending suspension.

3      Later on August 31, 2011, Mr. Look filed a Supplemental Case Management Statement in

4  which he stated that, after the August 31 CMC, he had been able to contact Plaintiff.  ECF No. 41.

5      The following day, on September 1, 2011, the Court issued: (1) a written Order to Show

6  Cause Why Plaintiff's Case Should Not Be Dismissed for Failure to Prosecute (ECF No. 44), and

7  (2) a written Order to Show Cause Why Sanctions Should Not Be Imposed (ECF No. 43 ("OSC")).

8  In the OSC, Mr. Look was ordered to show cause why he should not be sanctioned for:

9      1. failing to disclose to opposing counsel that his impending suspension by the State Bar
10      was the true reason for his potential withdrawal from the case.
    2. failing to appear at the May 4, 2011 case management conference.
11      3. failing to comply with the discovery deadlines imposed by the Court's May 4, 2011 case
    management order, including: (a) failure to provide Plaintiff's dates of availability for
12      deposition by May 11, 2011; (b) failure to respond to Defendants' request to meet and
    confer by May 13, 2011; (c) failure to produce initial disclosures by May 18, 2011; (d)
13      failure to exchange documents designated in the initial disclosures by May 25, 2011; (e)
    failure to respond to Defendants' draft protective order by May 18, 2011.
14      4. failing to comply with the Court's July 2, 2011 order to file a motion to withdraw as
15      counsel by July 15, 2011.

16  *See Id.*  In an effort to comply with Mr. Look's request that the OSC hearing take place before his

17  bar suspension began, the Court expedited the briefing schedule on the OSC and set the OSC

18  hearing for September 8, 2011.  *See Id.*

19      On September 2, 2012, Mr. Look filed a Notice of Voluntary Dismissal, purporting to

20  dismiss the case pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i).  *See* ECF No. 47; Fed.

21  R. Civ. Proc. 41(a)(1)(A)(i)("[T]he plaintiff may dismiss an action without a court order by

22  filing… a notice of dismissal before the opposing party serves either an answer or a motion for

23  summary judgment….").  Plaintiff purportedly electronically signed the Notice of Voluntary

24  Dismissal with a typewritten "SS."  *Id.*

25      Four days later, on September 6, 2011, Mr. Look filed a response to the OSC.  ECF Nos.

26  48-49.  In his response, Mr. Look stated that his failure to file the Motion to Withdraw by the July

27

28

Case No.: 10-CV-02995-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR RELIEF UNDER RULE 60 AND TO
PURGE CONTEMPT

15, 2011 deadline was due to a calendaring error regarding the filing date and the fact that Mr. Look expected to voluntarily dismiss the case before July 2011.  ECF No. 48 at 3.

Mr. Look's response also included an explanation regarding his unsuccessful efforts to contact Plaintiff prior to the August 31 CMC, and the sequence of events that led him to discover a working number for Plaintiff immediately after the August 31 CMC.  Declaration of Counsel in Response to Order to Show Cause re Sanctions, ECF No. 49 ("Look Decl. re OSC"), ¶¶ 8-14.  Specifically, Mr. Look explained that after he left the Case Management Conference, he went home and tried calling Plaintiff again.  Look Decl. re OSC, ¶ 13.  He received a "no voice mail yet" error message.  *Id.* ¶¶ 12-13.  Mr. Look stated that he had received this error several times before, and, after hearing it again, he was able to "surmise[]" that he was using an old telephone number for Plaintiff and that that was why he could not contact her.  *Id.*  Mr. Look claimed that he had previously been aware that Plaintiff had a new number, but he had believed he was dialing the new number when he had tried calling her before.  *Id.*  Mr. Look stated that, after realizing he was using the old number, he searched through his file and found a current number for Plaintiff.  *Id.*  Mr. Look stated that he was eventually able to arrange to meet with Plaintiff and that, after Mr. Look explained the situation, Plaintiff gave her consent to dismiss the case.  *Id.*, ¶ 17-18.

Additionally, Mr. Look's September 6, 2011 response highlighted several "[t]echnical [i]ssues," about which he claimed he "lacked [the] opportunity to [fully] brief."  *See* ECF no. 48 at 4.  Significantly, despite the fact that the OSC proceedings had been expedited so that they could take place before Mr. Look's State Bar suspension began, one of the technical issues that Mr. Look raised was that the proceedings "fail[ed] to comply with the 21 day notice requirements of Rule 11."  *Id.*

On September 7, 2011, Defendants filed a motion to dismiss for failure to prosecute.  ECF No. 50.  Defendants' motion acknowledged that Plaintiff had filed a dismissal, but noted that the dismissal did not state whether it was with prejudice.  *Id.* at 1.  Accordingly, Defendants filed their motion seeking that the matter be dismissed with prejudice.  *Id.*

Case No.: 10-CV-02995-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR RELIEF UNDER RULE 60 AND TO PURGE CONTEMPT

Later, on September 7, 2011, Mr. Look filed an Amended Notice of Voluntary Dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i).  ECF No. 51.  This dismissal was physically signed by Plaintiff, and additionally, provided that the dismissal was with prejudice.  *Id.*

The OSC hearing was held on September 8, 2011.  Civil Contempt Order at 2.  The Court found Mr. Look in contempt.  *See* Transcript of September 8, 2011 Hearing, ECF No. 67 ("Contempt Hearing Transcript") at 10:20-11:1.  A written order followed on September 12, 2011.  *See* Civil Contempt Order.  The Court's finding of contempt was based on Mr. Look's: (1) failure to respond to various discovery requests and contacts from Ms. Leed; (2) failure to appear at the May 4, 2012 Case Management Conference; (3) failure to comply with the discovery orders issued by the Court in the Court's May 4, 2012 Case Management Order; (4) failure to file a motion to withdraw by July 15, 2011, in direct violation of the Court's July 2, 2011 Order Regarding Status of Plaintiff's Counsel (ECF No. 38); and (5) failure to contact his client for three full months until he was threatened with sanctions at the August 31, 2011 Case Management Conference.  *See* Civil Contempt Order at 3-5; Contempt Hearing Transcript at 6:14-7:10.  While the Court found it was appropriate to find Mr. Look in contempt and to forward a copy of the order to the California State Bar ("State Bar"), the Court declined to impose sanctions.  *See* Civil Contempt Order at 5.

Additionally, with respect to Plaintiffs' September 2, 2011 Notice of Voluntary Dismissal and September 7, 2011 Amended Notice of Voluntary Dismissal, the Court held that Plaintiff could not unilaterally dismiss the case because Rule 41(a)(1)(A)(i) only allows a plaintiff to unilaterally dismiss a case if the dismissed defendant has not served an answer.  *See* Civil Contempt Order at 6; Fed. R. Civ. Proc. 41(a)(1)(A)(i)("[T]he plaintiff may dismiss an action without a court order by filing… a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment….").   Because Defendants had served an answer to the Second Amended Complaint, Plaintiff was not allowed to dismiss them without a Court order or a stipulation.  *See* Civil Contempt Order at 6.  Additionally, in light of Mr. Look's conduct in this case, the Court believed it prudent to give Plaintiff an opportunity to be heard in person as to whether she wished to proceed.  *Id.*  In an effort to permit Plaintiff more time to respond to the Order to Show Cause

Case No.: 10-CV-02995-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR RELIEF UNDER RULE 60 AND TO PURGE CONTEMPT

1    regarding Plaintiff's failure to prosecute the case, the Court continued the Order to Show Cause

2    hearing for approximately one month until October 27, 2011, and extended the briefing schedule.

3    *Id.* at 7.  The Court also continued the hearing on Defendants' motion to dismiss to October 27,

4    2011.  *Id.*

5            Plaintiff did not appear at the October 27, 2011 hearing on the Order to Show Cause and on

6    Defendants' motion to dismiss.  ECF No. 55.  The Court therefore dismissed the case with

7    prejudice on the same date.  *Id.*

8            **C.      State Bar Proceedings**

9            In July 2012, the State Bar filed disciplinary charges against Mr. Look.  *See* Docket, State

10   Bar of California Case No. 11-O-17894[1].  According to Mr. Look, the State Bar proceedings were

11   initiated in part in response to the Civil Contempt Order.  *See* Declaration of William B. Look

12   ("Supp. Look Decl."), ECF No. 64-1, ¶ 1.  Mr. Look also indicates that the State Bar received a

13   report from Ms. Leed alleging that Mr. Look continued to practice law after the April 4, 2011 order

14   from the State Bar suspending Mr. Look.  *See* Declaration of Counsel in Support of Motion for

15   Relief Under Rule 60 and to Purge Contempt, ECF No. 57-1 ("Look Decl."), ¶ 4.  Mr. Look

16   represents that Ms. Leed's allegation was incorrect because Mr. Look's State Bar suspension began

17   in September 2011, and not April 2011.  *See* Transcript of Proceedings, November 6, 2012

18   ("November 6 Transcript") at 3:1-5.  Mr. Look states that the trial in the State Bar action is

19   scheduled for November 19, 2012.  *See* Supp. Look Decl. ¶ 3.

20           **D.      The Instant Motion for Relief**

21           On August 29, 2012, Mr. Look filed the instant Motion for Relief Under Rule 60 and to

22   Purge Contempt ("Motion for Relief").  ECF Nos. 57-58.  The Motion for Relief was scheduled for

23   a hearing on January 3, 2012.  ECF No. 60.  In October 2012, Mr. Look was advised that the State

24   Bar would not stay his State Bar trial, which was scheduled for November 19, 2012, until after the

25   January hearing on Mr. Look's Motion for Relief.  *See* November 6 Transcript at 23:2-13.  Thus,

26   on October 16, 2012, Mr. Look filed an *Ex Parte* Application for an Order Shortening Time for

27   _____

28   [1]  Available at http://apps.statebarcourt.ca.gov/dockets/dockets.aspx

Case No.: 10-CV-02995-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR RELIEF UNDER RULE 60 AND TO
PURGE CONTEMPT

Relief Under Rule 60 and to Purge Contempt ("Supp. Motion") requesting that the hearing on the Motion for Relief be advanced so that it could take place before Mr. Look's State Bar trial.  The Court granted the e*x parte* application on October 22, 2012.  *See* ECF No. 66.  Accordingly, the hearing on the Motion for Relief was held on November 6, 2012.

## II.      Legal Standard

Under Rule 60(b), reconsideration is permitted upon a showing of: "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief."  Fed. R. Civ. P. 60(b).  Relief under the sixth category "requires a finding of 'extraordinary circumstances.'" *Backlund v. Barnhart,* 778 F.2d 1386, 1388 (9th Cir.1985).

## III.      Discussion

In the Motion for Relief and Supp. Motion ("Motions"), Mr. Look argues that the Civil Contempt Order be vacated.  Mr. Look's principle argument is that, despite being labeled as "Civil," the Civil Contempt Order was imposed as a punitive, rather than remedial, measure, and thus was criminal in nature.  Motion for Relief at 2-5; Supp. Motion at 2-4.   Accordingly, Mr. Look argues that the Civil Contempt Order is void.  Motion for Relief at 2.  Mr. Look also argues that the Court's referral of this matter to the State Bar should be "withdraw[n]," and that this matter should instead be referred to the Northern District of California's Standing Committee ("Standing Committee") on Professional Conduct.  *See* Motion for Relief at 2 (requesting that the court "withdraw[] the State Bar referral" and refer this matter for "independent review… by another federal judge"); Look Decl., ¶ 26 (requesting referral to the "federal system" pursuant to Local Rule 11-6).  The Court will address each of these arguments in turn.  However, prior to proceeding to the merits, the Court briefly addresses the issue of standing.

Case No.: 10-CV-02995-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR RELIEF UNDER RULE 60 AND TO PURGE CONTEMPT

**United States District Court**
For the Northern District of California

### A.    Standing

Rule 60(b) provides that "On motion and just terms, the court may relieve *a party or its legal representative* from a final judgment, order, or proceeding…." Fed. R. Civ. Proc. 60(b) (emphasis added). Several courts have held that, based on this language, an attorney does not have standing to bring a motion for relief under Rule 60. For example, in *Walker v. Citibank, N.A.*, the Court held that "Rule 60(b) ... makes no provision for a motion ... to be brought by a party's counsel," and accordingly concluded that plaintiff's counsel did not have "standing to seek relief" from an order referring counsel to the state bar. *Walker*, 2:09-CV-03171, 2010 WL 2629506, at *4 (E.D. Cal. June 29, 2010) (quoting *In re El Paso Refinery, LP,* 37 F.3d 230, 234 (5th Cir.1994)).

Nevertheless, the Ninth Circuit has held that, under Rule 60(b), the Court may sua sponte reconsider one of its prior orders. *See Kingvision Pay-Per-View Ltd. v. Lake Alice Bar*, 168 F.3d 347, 351-52 (9th Cir. 1999) (adopting the view of the Fourth Circuit and the Fifth Circuit and holding that a court may sua sponte reconsider an order or judgment under Rule 60(b) (citing *United States v. Jacobs*, 298 F.2d 469, 472 (4th Cir. 1961), and *McDowell v. Celebrezze*, 310 F.2d 43 (5th Cir. 1962)).[2] Accordingly, the Court will treat Mr. Look's Motion for Relief as the Court's own motion and address the merits.[3]

---

[2] In *Kingvision*, the Ninth Circuit held that the Court could not reconsider its grant of a default judgment without giving the parties notice and an opportunity to be heard. 168 F.3d at 352. The Ninth Circuit reasoned that "a judgment is property"; thus, a judgment may not be "tak[en]… away [from a party]… [without] due process of law… [including] notice and an opportunity to be heard." *Id.* In this case, the Civil Contempt Order affected Mr. Look; thus, the Court does not believe either of the parties has a property interest in the Civil Contempt Order such that they need be provided notice and an opportunity to be heard. Moreover, the Court notes that Mr. Look's Motion for Relief was filed on ECF on August 29, 2012 (ECF No. 57), and re-noticed on September 7, 2012 (ECF No. 61). Mr. Look additionally mailed the Motion for Relief and supporting papers to Plaintiff on September 4, 2012, and mailed the amended notice to Plaintiff on September 7, 2012. *See* ECF No. 61. Despite having two month's notice of the Motion for Relief, neither Plaintiff nor Defendants have filed an opposition, nor did either party appear at the November 6, 2012 hearing. Accordingly, the Court concludes that the due process rights of Plaintiff and Defendants will not be violated by the Court's consideration of the Motion for Relief.

[3] The Court additionally notes that, while the language in Rule 60(b) states that it may be used to "relieve *a party or its legal representative*" (Fed. R. Civ. Proc. 60(b) (emphasis added)), the Court believes that this language should not be construed as prohibiting the Court, on a sua sponte motion under Rule 60, from granting relief where the relief would primarily benefit Plaintiff's attorney, Mr. Look, rather than one of the parties. *Cf Jacobs*, 298 F.2d at 472 (stating, in connection with its holding that a court may bring sua sponte motion under Rule 60(b) to relieve a party from judgment, that Rule 60(b) "need not necessarily be read as depriving the court of the power to act in the interest of justice in an unusual case in which its attention has been directed to the necessity for relief").

13

Case No.: 10-CV-02995-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR RELIEF UNDER RULE 60 AND TO PURGE CONTEMPT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

### B.     Civil Versus Criminal Contempt

First, the Court addresses Mr. Look's argument that the Civil Contempt Order should be vacated because it was an improper criminal contempt order.  Motion for Relief at 3.

To determine whether a contempt is classified as civil or criminal in nature, courts examine the "character and purpose" of the sanction involved.  *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994); *Penfield Co. of Cal. v. Sec. & Exch. Comm'n*, 330 U.S. 585, 590 (1947) ("It is the nature of the relief asked that is determinative of the nature of the proceeding.").  "Thus, a contempt sanction is considered civil if it 'is remedial, and for the benefit of the complainant.  But if it is for criminal contempt, the sentence is punitive, to vindicate the authority of the court.'"  *Int'l Union, United Mine Workers of Am.*, 512 U.S. at 827-28; *see also id.* (noting that civil contempt sanctions are designed to be "coercive and avoidable through obedience").  The distinction between civil and criminal contempt is significant because "criminal contempt is a crime in the ordinary sense" (*id.* at 826 (quoting *Bloom v. Illinois*, 391 U.S. 194, 201 (1968)), and "criminal penalties may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings." *Id.* (quoting *Hicks on Behalf of Feiock v. Feiock*, 485 U.S. 624, 632 (1988)).  These protections include the privilege against self-incrimination, proof beyond a reasonable doubt, and, in cases where a contemnor faces imprisonment of more than six months, the right to a jury trial.  *Id.* at 826-27 (citing *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 441 (1911); *Bloom*, 391 U.S. at 199).

Mr. Look argues that the Civil Contempt Order was criminal in nature because it was imposed in an effort to punish Mr. Look for his "abandonment" of the case, failure to timely withdraw, and other misconduct.  Motion for Relief at 2-5.  Mr. Look argues that the punitive, rather than remedial, nature of the Civil Contempt Order is evidenced by the fact that the Court granted Mr. Look's motion to withdraw at the same time it issued the Civil Contempt Order.  *Id.* at 5.  Thus, Mr. Look argues that the Civil Contempt Order could not have been remedial  because Mr. Look could not have remedied the issues giving rise to the order by complying with the Court's orders regarding discovery or filing a motion to withdraw.  *Id.*  Mr. Look further argues that the proceedings leading up to the Civil Contempt Order did not afford him with the due

14

Case No.: 10-CV-02995-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR RELIEF UNDER RULE 60 AND TO PURGE CONTEMPT

1    process necessary to impose a criminal contempt order because the proceedings were "summary"

2    and Mr. Look was not provided "adequate notice [or an] opportunity to respond."  *Id.* at 4.

3    Although the Court acknowledges that Mr. Look's argument has some merit, the Court does not

4    find the argument entirely persuasive.

5        As an initial matter, the nature of the Civil Contempt Order is not entirely clear.  As

6    explained in *Penfield*, "[i]t is the nature of the relief asked that is determinative of the nature of the

7    proceeding."  330 U.S. at 590.  Here, the Court did not seek any relief in the form of monetary

8    sanctions or imprisonment.  *See* Civil Contempt Order at 5.  Rather, the Court outlined Mr. Look's

9    misconduct and referred Mr. Look to the State Bar.  It is not clear that either of these actions

10   constitute the type of punitive sanctions that would make a contempt criminal.  *See In re Williams*,

11   156 F.3d 86, 88. 91-92 (9th Cir. 1998) (holding that district court's statements in order imposing

12   monetary sanctions, which characterized one attorney's testimony as "pure baloney" and ranked

13   the other attorney's "performance and credibility at about the same level," were not in and of

14   themselves sanctions, and holding that for critical statements regarding an attorney's conduct to

15   constitute sanctions the statements must be "expressly identified as a reprimand"); *Adkins v.*

16   *Christie*, 227 Fed. Appx. 804, 806 (11th Cir. 2007) (holding that "[a] referral [to the State Bar]

17   cannot be characterized as a sanction or a disciplinary measure" (citing *United States v. McCorkle*,

18   321 F.3d 1292, 1298-99 (11th Cir. 2003))).[4]   Indeed, in a similar situation, where a contempt order

19   did not impose any sanctions, but instead "reprimand[ed] [the attorney] and refer[ed] [him] to [the]

20   state bar disciplinary committee," the Eleventh Circuit held that the contempt order was not "a

21   contempt adjudication" at all.  *McCorkle*, 321 F.3d at 1298.

22       Nonetheless, the Court acknowledges that in the Civil Contempt Order, the Court also

23   granted Mr. Look's motion to withdraw.  Civil Contempt Order at 6.  Accordingly, Mr. Look is

24   _____

25   [4] The Court notes that the Ninth Circuit has not explicitly addressed the issue of whether a referral
     to the State Bar constitutes a sanction.  However, in *United States v. Lopez*, while criticizing the
26   district court for dismissing an indictment as a sanction for certain prosecutorial misconduct, the
     Ninth Circuit referred to a "referral to the state bar for disciplinary proceedings" as a "lesser
27   sanction[]."  *Lopez*, 4 F.3d 1455, 1464 (9th Cir. 1993).  Nevertheless, the Ninth Circuit's statement
     was dicta and not necessary to the holding in the case.  *See id.* (holding that the district court erred
28   when it dismissed the indictment as a sanction for the prosecutor's misconduct).

Case No.: 10-CV-02995-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR RELIEF UNDER RULE 60 AND TO
PURGE CONTEMPT

United States District Court
For the Northern District of California

1   correct that he had no "opportunity to purge" the contempt through compliance with the Court's

2   orders. *Int'l Union, United Mine Workers of Am.*, 512 U.S. at 829.  Thus, the character of the Civil

3   Contempt Order is not easily discernible.

4          With respect to Mr. Look's arguments about the proceedings pursuant to which the

5   contempt was imposed, the Court disagrees with Mr. Look's characterization of these proceedings

6   as "summary," and Mr. Look's argument that he was not provided with "adequate notice [or an]

7   opportunity to respond."  Motion for Relief at 5.  Prior to holding Mr. Look in contempt, the Court

8   issued an Order to Show Cause requiring Mr. Look to show cause why he should not be

9   sanctioned.  *See* ECF No. 43.  In the OSC, the Court stated that Mr. Look could file a written

10  response (*id.* at 3), and Mr. Look did indeed file such a response.  *See* ECF Nos. 48 (Memorandum

11  in Response to Order to Show Cause for Failure to Prosecute), and 49 (Declaration of Counsel in

12  Response to Order to Show Cause re Sanctions).   Moreover, at the hearing, Mr. Look had the

13  opportunity to further respond to the Court's findings.  *See* Contempt Hearing Transcript at 4:16-

14  18.

15         Furthermore, as to Mr. Look's argument that the expedited hearing schedule somehow

16  deprived him of his due process rights, the OSC hearing was expedited so that Mr. Look could

17  represent himself before Mr. Look's State Bar suspension began.  *See* August 31 CMC Transcript

18  at 25:22-25 ("The Court: I am going to set a hearing on the order to show cause, and unfortunately

19  I think it needs to be before the 9th because that's when you are no longer able to practice.  Mr.

20  Look, Jr.: That's correct.");  *id.* at 2:21-3:7 (Mr. Look stating that, if he were to file a motion to

21  withdraw, the motion would need to be "hear[d]… by the 7th" because Mr. Look was going to be

22  suspended beginning September 9, 2011).

23         Nevertheless, even though the Court is not entirely persuaded by Mr. Look's arguments, the

24  Court finds that Mr. Look has raised a legitimate question as to whether the Civil Contempt Order

25  was criminal in nature.  Moreover, the Court's primary purpose in issuing the Civil Contempt

26  Order was to outline Mr. Look's conduct in this case and to refer Mr. Look to the State Bar so that

27  it can determine whether any further action should be taken.  The finding of contempt itself was not

28

Case No.: 10-CV-02995-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR RELIEF UNDER RULE 60 AND TO
PURGE CONTEMPT

**United States District Court**
For the Northern District of California

essential to accomplishing this purpose.  Accordingly, the Court vacates its finding that Mr. Look was in contempt.[5]

### C.    Referral to the State Bar

Mr. Look also argues that the referral to the State Bar should be "withdraw[n]" and that this matter should be referred to the Northern District of California's Standing Committee on Professional Conduct ("Standing Committee") pursuant to Northern District of California Local Rule 11-6.  *See* Motion for Relief at 2 (requesting that the court "withdraw[] the State Bar referral" and refer this matter for "independent review… by another federal judge"); Look Decl., ¶ 26 (requesting referral to the "federal system" pursuant to Local Rule 11-6).  As will be discussed below, the Court believes that its referral of this matter to the State Bar was appropriate and therefore declines to withdraw its referral.

The Court's referral to the State Bar was authorized under Local Rule 11-6.  When the Civil Contempt Order was issued in September 2011, Local Rule 11-6(a) provided that: "[i]n the event that a Judge has cause to believe that an attorney has engaged in unprofessional conduct, the Judge may do any or all of the following: (1) Initiate proceedings for civil or criminal contempt…; (2) Impose other appropriate sanctions; *(3) Refer the matter to the appropriate disciplinary authority of the state or jurisdiction in which the attorney is licensed to practice;* (4) Refer the matter to the Court's Standing Committee…; or (5) Refer the matter to the Chief Judge…." (emphasis added).[6] Thus, pursuant to subsection (3), if the Court had cause to believe that Mr. Look engaged in unprofessional conduct, the Court was authorized to refer the matter to the State Bar for further investigation.  *See e.g. In re Lehtinen*, 332 B.R. 404, 414 (B.A.P. 9th Cir. 2005) *aff'd*, 564 F.3d 1052 (9th Cir. 2009) (holding that, under Local Rule 11-6(a), "the bankruptcy court had authority

---

[5] Because the Court has agreed to vacate its finding of contempt against Mr. Look, the Court need not resolve Mr. Look's argument that "it was an abuse of discretion to invoke the contempt power to resolve a Rule 37 dispute."  Supp. Motion at 6.
[6] As amended in July 2012, Local Rule 11-6 now provides that: "[i]n the event that a Judge has cause to believe that an attorney has engaged in unprofessional conduct, in addition to any action authorized by applicable law, the Judge may do any or all of the following: (1) Refer the matter to the Court's Standing Committee on Professional Conduct; or (2) Refer the matter to the Chief District Judge with the recommendation that an order to show cause be issued under Civil L.R. 11-7."

17

Case No.: 10-CV-02995-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR RELIEF UNDER RULE 60 AND TO PURGE CONTEMPT

to impose its own sanctions in addition to referring the matter to the State Bar of California");

*Mazzamuto v. Wachovia*, C 10-02851 WHA, 2010 WL 4916430, at *3 (N.D. Cal. Nov. 23, 2010)

(directing the Clerk "to send a copy of this order to the state bar for investigation and to the

district's Standing Committee on Professional Conduct pursuant to Civil Local Rule 11-6").  There

was ample evidence to support such a finding in this case.

     As explained by the Court at the September 8, 2011 hearing on the OSC and in the Civil

Contempt Order, Mr. Look engaged in a range of unprofessional conduct including: (1) failing to

respond to discovery requests and contacts from Ms. Leed; (2) failing to appear at the May 4, 2012

Case Management Conference; (3) representing to Ms. Leed that Mr. Look was withdrawing from

the case because he intended to be out of state for several months while failing to mention that he

was actually required to withdraw because he was about to be suspended by the State Bar; (4)

failing to comply with the discovery orders issued by the Court in the Court's May 4, 2012 Case

Management Order; and (5) failing to file a motion to withdraw by July 15, 2011 in direct violation

of the Court's July 2, 2011 Order Regarding Status of Plaintiff's Counsel (ECF No. 38).  *See* Civil

Contempt Order at 3-5; Contempt Hearing Transcript at 6:14-8:2.  Additionally, Mr. Look

represented that he was unable to reach his client for a period of three full months but, after being

threatened with sanctions, he was miraculously able to contact her.  *See* Civil Contempt Order at 4-

5.

     Mr. Look failed to offer sufficient or credible explanations for the aforementioned

conduct.  For example, Mr. Look claimed that he failed to appear at the May 4 CMC and to

comply with the discovery orders in the Court's May 4, 2011 Case Management Order

because he lacked the funds necessary to prosecute the case.  *See* ECF No. 34.  Mr. Look also

argued that he was attempting to secure successor counsel to take the case during his

impending suspension, and that this excused his failure to participate in discovery and

comply with the Court's discovery orders.  *See* ECF No. 48-1 at 3 ("I did not have the funds

to pay for discovery and if new counsel came into the case, any dates set would have to be

reset.  If the case had to be dismissed, there was no point in starting discovery"); ECF No.

Case No.: 10-CV-02995-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR RELIEF UNDER RULE 60 AND TO
PURGE CONTEMPT

48-1 at 2 (Mr. Look stating that "[o]ne of the reasons for not more completely complying with the preliminary discovery in this matter in March and April was this pending meeting which I expected to result in a substitution of counsel"). These arguments are not persuasive. As stated in the Civil Contempt Order, Mr. Look was not permitted to make a "unilateral decision that it would be inefficient to [respond to discovery requests and to] comply with the Court's orders." Civil Contempt Order at 3. If Mr. Look "needed time to find successor counsel, he should have notified opposing counsel and the Court," and then either sought "a stay of discovery until the matter could be resolved or file[d] a motion to withdraw from the case." *Id.* Mr. Look did neither.

Mr. Look also failed to offer a credible explanation for his failure to file a motion to withdraw by July 15, 2011, as required by the Court's July 2, 2011 order. In Mr. Look's August 24, 2011 Case Management Conference Statement and at the August 31 CMC, Mr. Look took the position that he had mistakenly understood the Court's order as requiring him to file a substitution of counsel, rather than a motion for leave to withdraw. ECF No. 40 at 1 (Mr. Look stating that "[i]n June 2011[,] th[e] [C]ourt requested that a substitution be filed before the pending CMC"); August 31 Transcript at 2:15-16 (Mr. Look stating that he "understood" the Court's July 2, 2011 order as requiring him to "file a substitution of counsel"). Specifically, Mr. Look stated that he was unable to file a substitution of counsel because he had been unable to find substitute counsel and because he had been unable to contact the client since "early June 2011." ECF No. 40 at 1-2. However, only one week after the August 31 CMC, Mr. Look offered a different explanation for his failure to file a motion for leave to withdraw. In his September 6, 2011 response to the Court's OSC, Mr. Look claimed that his failure to file the motion to withdraw was due to his failure to calendar the due date for the motion. ECF No. 48 at 3. Mr. Look further stated that he failed to calendar the due date because he had "expect[ed]… the case would be voluntarily dismissed," which did not happen because of "a break down (sic) of the contact with the client…." *Id.* Not only is this explanation different than the explanation Mr. Look gave in

19

Case No.: 10-CV-02995-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR RELIEF UNDER RULE 60 AND TO PURGE CONTEMPT

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

his August 24, 2011 Case Management Statement and at the August 31, 2011 hearing, Mr.

Look's claim that he expected to voluntarily dismiss the case is entirely inconsistent with Mr.

Look's statements at the August 31, 2011 hearing indicating that he intended to continue

litigating the case after his suspension. *See* August 31 CMC Transcript at 5:7-9 (Mr. Look

stating that he had been intending to "remain [as counsel] of record" and to find another

attorney "to fill in for [him] during the period of [his] suspension"). As the Court stated in

the Civil Contempt Order, the aforementioned inconsistencies seriously undermine the

credibility of Mr. Look's explanation for his failure to file the motion to withdraw. *See* Civil

Contempt Order at 4 (holding that Mr. Look's "shifting excuses" regarding his failure to file

a motion to withdraw "undermine Mr. Look's credibility").

   Mr. Look's explanation regarding his purported inability to contact his client for three

full months was similarly deficient. Mr. Look stated that he had tried numerous times to

contact his client via telephone, email, and by mailing letters to her address, but that he had

been unsuccessful. *See* Declaration of Counsel in Response to Order to Show Cause, ECF

No. 48-1, ¶¶ 10-11, 14. Mr. Look stated that it was only after the August 31 CMC (during

which, the Court notes Mr. Look was threatened with sanctions) that he was finally able to

"surmise[]" that the telephone number he was dialing was his client's old number. *Id.* ¶ 13.

He then searched through his file and found another, working number for his client. *Id.* As

stated by the Court in the Civil Contempt Order, Mr. Look's claim that he was unable,

despite due diligence, to find his client's number until the day he was threatened with

sanctions was simply not credible. Civil Contempt Order at 5. The Court remains convinced

that its finding that Mr. Look's explanation was not credible was warranted.

   The Court notes that, in the instant Motions, Mr. Look again disputes the Court's

finding regarding his inability to contact his client. Mr. Look argues that after the August 31

CMC, he "made an extra effort to find a good telephone number for" his client, and that, as a

result of this extra effort, he was successful in reaching his client after the hearing. Supp.

Motion at 5 (arguing that the Court's findings in connection with the Civil Contempt Order

Case No.: 10-CV-02995-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR RELIEF UNDER RULE 60 AND TO
PURGE CONTEMPT

United States District Court
For the Northern District of California

1    were "capricious").  This explanation is unpersuasive.  Even accepting Mr. Look's

2    explanation, Mr. Look's conduct would still be inadequate to the extent he failed to: (1)

3    maintain adequate records of his client's contact information, and (2) make the "extra effort"

4    necessary to find Plaintiff's current contact information during the three months preceding

5    the August 31 CMC and before sanctions became a possibility.

6         Mr. Look also argues that the Court "false[ly] assum[ed] [that Mr. Look] had

7    neglected… to inform [his] client about" his suspension.  *Id*.  Mr. Look argues that he fully

8    informed his client about his "suspension several months prior to the September hearing."

9    *Id.* at 5-6; *see also* November 6 Transcript at 16:1-9 (Mr. Look stating that he informed

10   Plaintiff that he was going to be suspended by the State Bar sometime between January 2011

11   and April 2011).  However, prior to his Motion for Relief, Mr. Look never represented to the

12   Court that he had informed Plaintiff that he was going to be suspended.  Moreover, Mr. Look

13   had represented to opposing counsel that the reason for his substituting "out of this case [was

14   that Mr. Look]… anticipate[d] [he would]… be out of state for several months."  *See* Leed

15   Decl., Ex. B.  Thus, the Court had reason to doubt whether Mr. Look had informed Plaintiff

16   of his pending suspension.

17        In addition to the arguments above, Mr. Look repeats his arguments that his failure to

18   appear at the May 4 CMC and to comply with the May 4 Case Management Order should be

19   excused because he lacked funds to prosecute the case and because he was attempting to secure

20   new counsel.  Motion for Relief at 6 (arguing that an "element of economic discrimination

21   underlies the Civil Contempt Order and referral to the State Bar").  Specifically, Mr. Look argues

22   that he took Plaintiff's case on contingency and that he "ran out of money to" to prosecute the case.

23   *Id.*  Mr. Look further argues that he failed to respond to discovery requests, to comply with the

24   Court's discovery orders, and to appear at the May 4 hearing because he wanted to mitigate the risk

25   that Plaintiff would be subjected to a "motion to compel and demand for sanctions for" engaging in

26   "discovery without the ability to complete it…."  *Id.* at 7.  Mr. Look additionally contends that his

27   failure to respond to discovery and comply with the Court's orders should be excused because he

28

Case No.: 10-CV-02995-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR RELIEF UNDER RULE 60 AND TO
PURGE CONTEMPT

United States District Court
For the Northern District of California

was "attempt[ing] to find new counsel." *Id.* Mr. Look's arguments are not persuasive. As set

forth above and in the Civil Contempt Order, Mr. Look was not permitted to make a "unilateral

decision that it would be inefficient to [respond to discovery requests and to] comply with the

Court's orders." Civil Contempt Order at 3.

Mr. Look also argues that the Court's determinations regarding Mr. Look's conduct were

improperly influenced by its knowledge that the State Bar was preparing to suspend Mr. Look. *See*

Supp. Motion at 8 (arguing that the Court was "biased because of [Mr. Look's]… pending

suspension); *id.* at 9 (arguing that the Court held Mr. Look in contempt because, as a result of the

State Bar's decision to suspend Mr. Look, the Court erroneously believed that Mr. Look was a

"bad character"). The Court disagrees. As set forth above, Mr. Look engaged in a pattern of

troubling behavior, including failing to appear at a hearing before the Court, failing to comply with

the Court's orders regarding discovery, and failing to comply with the Court's order to withdraw as

counsel. While the Court was certainly aware of the State Bar's suspension of Mr. Look when it

issued the Civil Contempt Order, the Court's decision to refer Mr. Look to the State Bar was

caused by Mr. Look's conduct in this case. Additionally, the Court notes that the Court first raised

the possibility of sanctions against Mr. Look in its May 4, 2011 Case Management Order, before

the Court learned of Mr. Look's State Bar suspension. ECF No. 30 (May 4, 2011 Case

Management Order) ("If Plaintiff fails to comply with these [discovery] deadlines, the Court may

issue an order to show cause… why Plaintiff's counsel and/or Plaintiff should not be sanctioned");

Leed Decl. ¶ 2 (June 20, 2011 declaration from Ms. Leed informing the Court that Mr. Look has

been suspended). Accordingly, Mr. Look's argument is rejected.[7]

---

[7] In the Motions, Mr. Look makes a number of broader arguments concerning the propriety, effect, and operation of the rules and principles governing attorney conduct. Specifically, Mr. Look argues that the ethical standards governing attorneys are "moralistic vagaries[] and commercially [un]reasonable." Supp. Motion at 9-10. Mr. Look also argues that California Rule of Court 9.20 effectively compels attorneys who are subject to discipline "to simply drop pending matters, leaving clients to fend" for themselves because the Rule provides disciplined attorneys only 30 days to withdraw from cases. *Id.* at 12; *see also* Cal. R. of Ct. 9.20 (requiring disbarred, suspended, or resigning attorneys to notify clients, opposing counsel, and the Court of the disbarment, suspension or resignation and the attorney's corresponding inability to continue on as counsel in pending cases within 30 days). Finally, Mr. Look argues that "small firms and solo practitioners" are subject to a disproportionate amount of complaints regarding billing because the

22

For the reasons set forth above, the Court concludes that its referral of this matter to the State Bar was warranted.  The Court had substantial reason to believe that Mr. Look engaged in unprofessional conduct.  This conduct was detrimental to Plaintiff's case.

The Court also declines to withdraw its referral to the State Bar in favor of a referral to the Standing Committee.  As set forth above, the Court was authorized to make a referral to the State Bar.  Furthermore, Mr. Look admits that it is not clear that the Court's withdrawal of its referral would prevent the State Bar from proceeding with its trial against Mr. Look.  *See* Transcript of Proceedings, November 6, 2012 ("November 6 Transcript") at 16:24-17:7 (Mr. Look stating that he did not believe the State Bar would terminate its proceedings if the Court vacates its contempt order and withdraws its referral to the State Bar).  Accordingly, it is likely that a referral to the Standing Committee would only multiply the proceedings against Mr. Look.  Moreover, in light of the resources the State Bar has already dedicated to investigating Mr. Look's conduct and the fact that the trial is next week, the Court believes it would be inappropriate for the Court to withdraw its referral now in favor of a referral to the Standing Committee.

## IV.     Conclusion

The Court affirms the factual findings as well as the referral to the State Bar in the Civil Contempt Order.  However, the Court VACATES the Civil Contempt Order's finding that Mr. Look was in contempt.

**IT IS SO ORDERED.**

Dated: November 15, 2012

_Lucy H. Koh_

LUCY H. KOH
United States District Judge

**United States District Court**
For the Northern District of California

---

smaller clients small firms and solo practitioners serve are more likely to be emotionally tied to a case and "discontent."  Supp. Motion at 10-11.  The Court is not persuaded by these arguments.

23

Case No.: 10-CV-02995-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR RELIEF UNDER RULE 60 AND TO PURGE CONTEMPT